(No. 29744.—
THE PEOPLE *ex rel.* Willard J. Goodman, County Collector, Appellee, *vs.* WABASH RAILROAD COMPANY *et al.,* Appellants.

*Opinion filed Nov. 20, 1946—Rehearing denied January 20, 1947.*

522

HENRY I. GREEN, JOSEPH W. CORAZZA, and ORIS BARTH, all of Urbana, and HENRY L. JONES, of Champaign, (JOSEPH A. McCLAIN, JR., and J. H. MILLER, both of St. Louis, Mo., and JOHN W. FREELS, and R. C. BECKETT, both of Chicago, of counsel,) for appellants.

JOHN J. BREESE, State's Attorney, of Urbana, (JOHN H. BARTH, of Champaign, of counsel,) for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

This is an appeal by the Wabash Railroad Company, Illinois Central Railroad Company and Illinois Terminal Railroad Company, from judgments of the county court of Champaign county, overruling certain objections to taxes filed by said companies. There is also a cross appeal perfected by the county collector from those parts of the judgments sustaining certain objections filed by the same companies. Separate objections were filed by appellants and separate judgments entered. However, an order was entered by one of the members of this court upon stipulation of the parties, consolidating the causes on this appeal and directing that the appeal be submitted on one record, as one appeal, in this court.

The objections overruled and which are involved on the appeal relate to two items of county taxes extended, namely: taxes for the maintenance and operation of a county tuberculosis sanitarium and certain specific items contained in the county levy for general corporate purposes. The facts are stipulated and are not in dispute.

The record relating to the tuberculosis santarium tax discloses that in 1916 a petition was filed with the county board, signed by one hundred legal voters of the county, requesting the board to submit to the voters of the county the proposition to levy a tuberculosis sanitarium tax in accordance with section 2 of the County Tuberculosis Sanitarium Act, passed on June 28, 1915. (Ill. Rev. Stat. 1943, chap. 34, par. 165.) Pursuant to this petition the proposition was submitted to the voters of the county at a general election held on November 7, 1916. A majority of the votes cast on the proposition was in favor of levying such tax. Thereafter the county established and has maintained for more than twenty-five years a county tuberculosis sanitarium, pursuant to said statute. Under the decisions of this court this vote authorized the county to levy taxes for tuberculosis sanitarium purposes only within the maximum

rate authorized by law for general county purposes and as a part of such rate. It did not authorize it to levy taxes for the purpose of acquiring, maintaining and operating a tuberculosis sanitarium in addition to the maximum county rate authorized by law. (*People ex rel. Graff* v. *Wabash Railway Co.* 286 Ill. 15.) It is stipulated that following said election the county board levied taxes annually for county tuberculosis sanitarium purposes and for more than fifteen years last past said taxes have been extended in addition to the maximum rate authorized for general county purposes.

Pursuant to a resolution theretofore adopted by the county board, there was submitted to the voters of the county at the general election held on November 7, 1944, the proposition to levy taxes for county tuberculosis sanitarium purposes, in excess of the maximum rate fixed by law for general county purposes, for the years 1944 to 1952, inclusive, said excess not to exceed one mill on each one dollar of the assessed valuation of property. At said election a majority of the votes cast upon the proposition was in favor of such additional tax. The taxes here involved for county tuberculosis sanitarium purposes were levied and extended in addition to the maximum rate allowed by law for general county purposes under the authority of that vote.

It is contended by appellants that the vote on November 7, 1944, authorizing a levy of taxes for tuberculosis sanitarium purposes, in excess of the maximum rate allowed by law for county purposes, was ineffective and did not authorize the extension of such taxes in excess of the maximum county rate, for the reason that said election was not called pursuant to a petition of one hundred or more voters, as specified in said section 2 of the County Tuberculosis Sanitarium Act. It is contended that the county board, in the absence of such petition, was without authority to call that election; that the election having

been called without such petition having been presented to the county board, the vote was wholly inoperative and ineffective to authorize the extension of such taxes in addition to the maximum county rate authorized by law for general county purposes.

We think this is a misapprehension of the law. Section 1 of the County Tuberculosis Sanitarium Act (Ill. Rev. Stat. 1943, chap. 34, par. 164,) confers power upon the county board to levy taxes for the purpose of establishing and maintaining a county tuberculosis sanitarium when authorized in the manner provided in said act. Section 2 provides that when one hundred legal voters shall present a petition to the county board asking that an annual tax be levied for the establishment and maintenance of a county tuberculosis sanitarium, the county board shall instruct the county clerk, and it shall be his duty to submit to the voters of the said county the proposition of levying such tax at a rate of not to exceed one and one-half mills on the dollar. If such proposition is approved by the voters, the county board is authorized thereafter to levy the tax at the rate authorized.

There is no provision contained in the County Tuberculosis Sanitarium Act authorizing the county board to submit to the voters the proposition of levying taxes for county tuberculosis sanitarium purposes in addition to the maximum rate authorized for general county purposes. The authority to extend taxes in addition to the maximum statutory rate for general county purposes is provided for in section 27 of the Counties Act. (Ill. Rev. Stat. 1945, chap. 34, par. 27.) There is no reference to this section in the County Tuberculosis Sanitarium Act and that act is not exempted from the provisions of this section. (*People ex rel. Graff* v. *Wabash Railway Co.* 286 Ill. 15.) The only way in which a county may be authorized to exceed the general statutory limit for county purposes in levying taxes is by following the requirements in said section 27.

Section 27 does not require a petition as a prerequisite to the authority of the county board to submit to the voters the proposition of levying taxes in addition to the statutory limit. (*People ex rel. Moomey* v. *Illinois Central Railroad Co.* 301 Ill. 288.) When the steps designated in said section 27 are followed, the county board is authorized to levy and collect taxes in excess of the statutory limit. *People ex rel. Hines* v. *Baltimore and Ohio Southwestern Railroad Co.* 366 Ill. 318.

The County Tuberculosis Sanitarium Act must be complied with in order to authorize the county to levy taxes for the purpose of establishing and maintaining a tuberculosis sanitarium. When the requirements of that act have been observed, then the county is authorized to include an amount for such purpose in its annual appropriations and levy taxes for that purpose within the limits of the rate authorized. In extending such taxes, however, they must be included within the maximum rate authorized by law for general county purposes. Taxes levied for the purpose of establishing and maintaining a county tuberculosis sanitarium are taxes levied for general corporate purposes of the county. As such they must be included within the maximum rate prescribed for county purposes. *People ex rel. Smith* v. *Wabash Railway Co.* 377 Ill. 68.

Section 27 of the Counties Act (Ill. Rev. Stat. 1945, chap. 34, par. 27,) provides that when the county board shall deem it necessary to assess taxes the aggregate of which shall exceed the taxes which are authorized to be levied without a vote of the people, it may, by an order entered of record, set forth substantially the amount of such excess required, the purpose for which the same will be required, and the number of years such excess will be required to be levied. It may then submit the proposition of levying the taxes in excess of the statutory rate to a vote of the people of the county. If a majority of the votes cast on said proposition is in favor of the addi-

tional levy, then the county board is given power to cause such additional tax to be levied and collected in accordance with the terms of the resolution submitting the proposition to a vote.

It follows that by the election held pursuant to the petition signed by one hundred voters in 1916, the county board was authorized to levy taxes for the purpose of establishing and maintaining a county tuberculosis sanitarium. The taxes so authorized, however, constituted a part of the taxes levied for the general corporate purposes of the county and the statute required that they be included in the maximum rate authorized by law for such purposes. Then, under section 27, in 1944, the county board having submitted to the voters, in accordance with that section, the proposition to levy taxes for county tuberculosis sanitarium purposes in addition to the maximum rate authorized by law for the general corporate purposes of the county, and the voters having approved such additional levy, it was authorized to thereafter levy taxes in excess of the county maximum rate in accordance with said section 27. There is no requirement that a vote for authority to levy additional taxes under section 27 shall be initiated by a petition of the voters of the county. The county board is given authority by that section to act upon its own initiative in passing a resolution submitting the proposition to a vote of the people. The provisions of section 2 of the County Tuberculosis Sanitarium Act, which require that a vote on the question of authorizing the county to levy taxes for the purpose of establishing and maintaining a county tuberculosis sanitarium shall be initiated by a petition of 100 legal voters, do not apply to an election under section 27 to authorize taxes to be levied in addition to the statutory rate for general county purposes. The county having been duly authorized by the vote of 1944 to levy the taxes in addition to the statutory rate for the general corporate purposes of the county, it had the right to extend

the taxes in addition to that rate, and the county court did not err in overruling the objections.

The next items of taxes to which the objections were overruled are certain items contained in the levy for general county purposes. The taxes of this character which were objected to by the Wabash Railroad Company and the Illinois Central Railroad Company are the following items:

"1. Coroner's fees ...............................$ 1,200.00
2. Salary of 3 jailors............................ 4,500.00
3. Sheriff—Conveying prisoners . : ............. 3,000.00
4. Sheriff—car expense for patroling Co. roads.. 3,900.00
5. Stamps and stamped envelopes................ 2,500.00
6. Publishing legal notices...................... 3,500.00
7. Care of transient paupers.................... 500.00"

The items in the general levy for the corporate purposes of the county, objected to by Illinois Terminal Railroad Company, are as follows:

"1. Salary of Janitors—Court House.............$ 4,500.00
2. Almshouse, for maintenance of County Home.. 15,580.00 .
3. Coroner's fees ............................. 1,200.00
4. Justice of Peace fees....................... 1,000.00
5. Constable fees ............................. 800.00
6. Salary three jailors......................... 4,500.00
7. Stamps and stamped envelopes................ 2,500.00
8. Publishing legal notices..................... 3,500.00"

We will first consider the items objected to by the Wabash Railroad Company and the Illinois Central Railroad Company, and then discuss the additional items objected to by the Illinois Terminal Railroad Company. It is contended that the items for coroner's fees, salary of three jailers, sheriff, conveying prisoners, sheriff, car expense, patrolling roads, stamps and stamped envelopes, and publication of legal notices, were levied in violation of section 10 of article X of the constitution. That section of the constitution provides that "The County Board * * * shall fix the compensation of all county officers, with the

amount of their necessary clerk hire, stationery, fuel and other expenses, and in all cases where fees are provided for, said compensation shall be paid only out of, and shall in no instance exceed, the fees actually collected." It is argued that under this section these items are payable only out of the fees collected by county officers and hence the county could not appropriate money or levy taxes for the payment of the same.

Section 26 of the Fees and Salaries Act (Ill. Rev. Stat. 1945, chap. 53, par. 44,) prescribes the fees to which a coroner shall be entitled for the performance of his official duties. It further provides that if such fees cannot be collected out of the estate of the deceased, they shall be paid out of the county treasury. That section further provides that whenever the coroner shall be required by law to perform any of the duties of sheriff, he shall be entitled to like fees and compensation as shall be allowed by law to the sheriff for the performance of similar duties. Therefore, if the coroner is unable to collect his statutory fees from the estate of the deceased, the county is liable for such fees. Likewise, when he renders services appertaining to the office of sheriff, he may be entitled to certain fees, payable out of the county treasury. Clearly, the county has the right to levy taxes for the payment of such fees.

The second item is the salary of three jailers. By statute each county is required to keep and maintain a common jail. (Ill. Rev. Stat. 1945, chap. 75, par. 1.) The sheriff is, by statute, designated as the warden of the jail, or jailer of his county. (Ill. Rev. Stat. 1945, chap. 75, par. 2.) He may appoint a superintendent of the jail. (Ill. Rev. Stat. 1945, chap. 75, par. 3.) He may, at the expense of the county, employ the necessary guards for guarding and safekeeping this prisoners. (Ill. Rev. Stat. 1945, chap. 75, par. 13.) This section further provides that the expense of such guards shall be audited and paid

with other county expenses. The statute further provides that the cost and expense of keeping, maintaining and furnishing the jail of each county and of the prisoners shall be paid by the county. Ill. Rev. Stat. 1945, chap. 75, par. 24.

The sheriff is entitled to certain fees for conveying prisoners, payable from the county treasury. (Ill. Rev. Stat. 1945, chap. 53, par. 37.) While such fees are earnings of his office and must be accounted for by him as such, they are nevertheless fees earned against the county and which the county is liable to pay. By the same section of the statute, the sheriff is allowed certain other fees. It provides that "For patrolling all public highways in his county, the sheriff shall receive a reasonable fee to be allowed by the County Board and paid out of the County Treasury."

The next item objected to is for "stamps and stamped envelopes." This item is not limited to stamps and stamped envelopes for any particular office, either a fee office or other office. Section 26 of the Counties Act (Ill. Rev. Stat. 1945, chap. 34, par. 26,) makes it the duty of the county board to provide suitable books, stationery, printing and postage for the use of the county board, county clerk, county treasurer, recorder, sheriff, coroner, State's Attorney, superintendent of schools, surveyors, judges, and clerks of courts of record. This is a mandatory duty. (*McClaughry* v. *Board of Supervisors*, 46 Ill. 356; *County of Knox* v. *Arms*, 22 Ill. 175.) Clearly, the county had the right and it was the duty of the county board to provide postage and stationery for all the county officers enumerated in the above section of the statute. It is also made the duty of the county, by said section of the statute, to pay the cost of printing. Section 106 of the Revenue Act (Ill. Rev. Stat. 1945, chap. 120, par. 587,) provides that the cost of printing and publication of assessments shall be paid out of the county treasury. Section 22 of the Fees and Salaries Act (Ill. Rev. Stat. 1945, chap. 53, par. 40,) provides

that the cost of printing certain parts of the delinquent lists shall be paid by the county. Section 8 of the act relating to the publication of notices provides that when any notice shall be required by law to be published by a public officer in relation to public business, the expense shall be allowed and paid out of the State or county treasury, as the case may require. Ill. Rev. Stat. 1945, chap. 100, par. 8.

The item of "Salary of Janitors—Court House" is objected to by Illinois Terminal Railroad Company. It is argued that salaries of courthouse janitors must, under section 10 of article X of the constitution be paid out of fees earned. It does not appear, however, from the argument of counsel the fees of what office should be applicable to the payment of such expense. Section 26 of the Counties Act (Ill. Rev. Stat. 1945, chap. 34, par. 26) provides that it shall be the duty of the county board of each county to erect or otherwise provide when necessary, and the finances of the county will justify it, and keep in repair, a suitable courthouse, jail and other necessary buildings and to provide proper rooms and offices for the accommodation of the several courts of record of the county, for the county board, State's Attorney, county clerk, county treasurer, recorder, sheriff, and the clerks of said courts, and to provide suitable furniture therefor. It also makes it the duty of the county board to provide and keep in repair suitable fireproof safes and offices for the county clerk, State's Attorney, county treasurer, recorder, sheriff and clerks of courts. Under this section it is the duty of the county board to maintain a courthouse. (*People ex rel. Gamber* v. *Board of Supervisors,* 294 Ill. 579; *County of Mercer* v. *Wolff,* 237 Ill. 74.) This duty is mandatory. *County of Coles* v. *Goehring,* 209 Ill. 142.

While the sheriff is entrusted with the care and custody of the courthouse, his authority is subject to the control of the county board. (*Consolidated Chemical Laboratories* v. *Cass County,* 322 Ill. App. 53.) He has the right

to employ a janitor for the courthouse and the county is liable for the salary of such janitor. (*County of Edgar* v. *Middleton,* 86 Ill. App. 502.) Under the powers and duties of the county board, as prescribed by statute, it cannot be seriously contended that the salary of a courthouse janitor is not a proper corporate expense of the county, for the payment of which it may levy and collect taxes.

The item for "Care of transient paupers," objected to by the Wabash and Illinois Central Railroad Companies, and the additional item for "Almshouse, for maintenance of county home," objected to by Illinois Terminal Railroad Company, may be considered together. Since by statute the burden of supporting paupers is placed on the townships in counties under township organization, the county has no authority to levy taxes for the support of paupers. (*People ex rel. Thies* v. *Baltimore and Ohio Southwestern Railroad Co.* 356 Ill. 272.) As to the item for "Almshouse, for maintenance of county home," objected to by Illinois Terminal Railroad Company, in *People ex rel. Sizer* v. *Peoria and Eastern Railway Co.* 354 Ill. 30, we sustained a similar levy. We there pointed out that notwithstanding the burden of supporting paupers is upon the townships instead of the county, still the county is authorized by statute to maintain a county home and to levy taxes for that purpose. The case is conclusive on this question.

As to the two remaining additional items objected to by Illinois Terminal Railroad Company, *viz:* "Justices of the Peace fees" and "Constable fees," section 40 of the Fees and Salaries Act, (Ill. Rev. Stat. 1945, chap. 53, par. 59,) after first fixing the fees of justices of the peace, police magistrates and constables, in criminal cases, provides that when such fees cannot be collected from the party convicted, or where the prosecution fails, the cost of prosecution, or so much thereof as shall seem just and equitable, "shall be paid out of the county treasury."

It follows that every item in the county levy objected to, with the single exception of the item for "care of transient paupers," is for an expense for which, by statute, the county is made liable. These items were levied for the purpose of providing a fund for the payment of claims which the county is obligated to pay. Money which may be paid to the sheriff out of the item levied for "sheriff, car expense for patrolling county roads," even though such payments be regarded as earnings of his office, are for a purpose expressly authorized by section 19 of the Fees and Salaries Act. (Ill. Rev. Stat. 1945, chap. 53, par. 37.) Whether the money is paid to the sheriff as fees for services rendered, or as expense of his office, makes no difference. Even if the sheriff is required to account for the amount received, as earnings of his office, this would not affect the liability of the county. Fees earned by the sheriff in the discharge of his official duties may be paid out of the county treasury without violating section 10 of article X of the constitution. In *People ex rel. Heuer* v. *Chicago, Burlington and Quincy Railroad Co.* 377 Ill. 470, we said: "The county board had a right to levy to pay these fees because the statute authorized their payment out of the county treasury. In spite of the fact that the sheriff had to record their payment just as he did all money he received and could not receive more than his compensation as fixed by the constitution and the county board, nevertheless, the levy is valid."

Each of the items contained in the county levy to which the objections were overruled, with the single exception above noted, was levied for the purpose of creating a fund to pay liabilities imposed upon the county by statute. The items levied were for expenses which constitute corporate purposes of the county. They were properly levied for lawful purposes.

This brings us to the cross appeal. The first question raised by the county collector on the cross appeal is the

action of the county court in sustaining an objection to an item contained in the county levy of $5000 for "contingent expense." The total county levy was $141,360. The item of $5000 for contingent expense was, therefore, approximately 3.54 per cent of the total county levy. In *People ex rel. Ross v. Chicago, Milwaukee, St. Paul and Pacific Railroad Co.* 381 Ill. 58, we said: "This court has recognized the necessity for an assessment of a small amount for contingent or miscellaneous expenses for the reason that it is not always possible to foresee all contingencies which may arise requiring the expenditure of money." In that case we held that an item of $2500 for contingent purposes in a total levy of $49,000 was excessive. In *People ex rel. Parmenter v. Chicago, Burlington and Quincy Railroad Co.* 256 Ill. 476, the total levy for county purposes was $64,000. We held an item of $2072.22 for contingent expense was excessive. In *People ex rel Mooneyham v. Cairo, Vincennes and Chicago Railway Co.* 247 Ill. 360, the court said: "A contingent fund is necessary for all municipal corporations. The reason for making such a levy is to provide a fund, usually a small one, out of which items of expenses which will necessarily arise during the year and which cannot appropriately be classified under any of the specific purposes for which other taxes are levied, may be paid." There is no definite yardstick by which the reasonableness of a levy for contingent expense may be determined and which can be applied in all cases. Obviously, the amount of such levies must rest in the sound discretion of the taxing body. (*People ex rel. Oller v. New York Central Railroad Co.* 388 Ill. 382.) In the case cited, in a total levy of $2500 made by a fire protection district, an item of $500 for contingent expense was approved. It was observed, however, that the contingent expenses of a fire protection district would be larger than such expenses incurred by other taxing districts. The court will take judicial notice of the size and popula-

tion of the municipality making the levy and determine whether or not in view of its wealth and population a tax levy for contingent purposes is an unreasonable amount to be levied under the general designation of "contingent expense," or other similar general designation. *People ex rel. Williamson* v. *Chicago, Burlington and Quincy Railroad Co.* 253 Ill. 100; *People ex rel. Holmquist* v. *Illinois Central Railroad Co.* 237 Ill. 324.

Applying these rules and testing the validity of the levy by the facts existing at the time the levy was made in September, 1944, when the country was at war; the general conditions of the country at that time; the fact that the legislature is constantly imposing new duties on counties without providing revenue to pay the additional expense incurred; that the purchasing power of money had greatly depreciated and that such depreciation was increasing; that the legislature at the last preceding session had imposed upon the counties enormous additional unforeseen expense for the registration of voters; that other increased expenses, the character of which could not be anticipated, might be imposed by the General Assembly at any time, under so-called war legislation and emergency war-time necessities, and all other conditions which could be properly anticipated and considered by the county board at the time the levy was made, we are not convinced that it abused its discretion in making the levy of $5000 for contingent expenses. Rules heretofore announced on the subject of contingent expenses must necessarily yield to changed conditions. Under the existing conditions we would not be justified in substituting our judgment for that of the board in a matter within its sound discretion.

The next question raised on the cross appeal challenges the action of the county court in sustaining objections to taxes extended for the city of Champaign for the payment of hospital bonds and interest. The record shows that the city levied and the county clerk extended taxes for gen-

eral corporate purposes of the city at the rate of .6666. In addition to this rate there was extended a rate of .19 for the payment of bonds and interest and a rate of .1666 for hospital purposes. The city by popular vote had established a public hospital in accordance with the statute. Some question is raised by cross appellant that the record does not show definitely whether the hospital bonds were issued under the authority of article 44 of the Cities and Villages Act, (Ill. Rev. Stat. 1945, chap. 24, par. 44-1 *et seq.*,) or under a prior statute. We think this is immaterial. Section 44-11 of the Cities and Villages Act provides that all cities in which the electors have approved the levy of an annual tax for establishing and maintaining, or purchasing and maintaining a public hospital, under the act of June 30, 1919, may continue to levy such tax under article 44, without again submitting the question to the electors for approval. It further provides that the directors, officers, and employees appointed under such prior act shall continue their offices and employment under the Revised Cities and Villages Act of 1941. In view of these provisions the question of levying taxes for the payment of bonds issued under the Revised Cities and Villages Act, or under prior statutes, is controlled by that act.

Section 44-1 provides that cities and villages with a population of less than 100,000 may, when authorized by a vote of the people, levy an annual tax not to exceed 1⅔ mills on the dollar for the establishment and maintenance of a public hospital. After the proposition has been approved, that section further provides, "Thereafter, the city council shall include an appropriation in the annual appropriation ordinance of such sums of money as may be necessary to defray all necessary expenses and liabilities of the hospital. This annual hospital tax shall be in addition to the amount authorized to be levied for general purposes under section 16-1." It will, therefore, be seen that

when authorized by a vote of the people, either under said section or under a prior statute, the city council may levy taxes annually at a rate of not to exceed $1\frac{2}{3}$ mills on each one dollar of the assessed valuation of property for hospital purposes, the levy to be in addition to the maximum statutory rate authorized to be levied for general corporate purposes. That section further provides that the taxes collected shall be known as the "Hospital Fund." Section 44-5 authorizes the corporate authorities of a city, for the purpose of constructing and equipping a hospital building or buildings, and for purchasing, equipping and maintaining an existing hospital, to issue the bonds of the city. Before such bonds are issued, however, the proposition must be submitted to, and approved by, a vote of the people. If the vote is favorable, the city is authorized to issue the bonds to be signed by the president and secretary of the hospital board and by the mayor and city clerk or commissioner of accounts and finance of the city. It further provides that such bonds shall be payable out of taxes to be collected by the city for "hospital purposes." As already observed, section 44-11 brings all existing hospitals constructed or acquired under prior statutes within these provisions of the Revised Cities and Villages Act.

In making the levy here, the full amount authorized by statute for general corporate purposes was levied and the taxes extended. In addition to the amount authorized for general corporate purposes, the county clerk extended taxes for hospital purposes under section 44-1, at the rate of .1666, and in addition to both of these amounts, there was extended a rate of .19 for the payment of bonds of the city. The record shows that at the time the taxes were extended, the bond ordinances and resolutions on file with the county clerk, which constituted the basis on which the clerk extended the rate of .19 for payment of bonds and

interest, showed the following bonds outstanding, issued by the city of Champaign:

"City Building Bond, $25,000 dated 7/1/36—1944 levy..$1,660.00
City Building Bond, $91,000 dated 12/1/35—1944 levy. 9,940.00
Fire Dept. Equipt. Bond, $31,000 dated 11/1/37—1944
   levy ....  ...................................... 3,040.00
Hospital Refdg. Bond, $54,000 dated 12/1/35—1944 levy 5,520.00
Hospital Bond, $40,000 dated 6/1/40—1944 levy....... 4,400.00

                                                $24,560.00"

The last two items for the payment of which taxes were extended within said .19 rate were hospital refunding bonds and hospital bonds, issued by the city. For the payment of those bonds the sums of $5520 and $4400, respectively, were extended by the clerk. In their attempt to sustain the action of the county court in sustaining their objections to these items, cross appellees contend that the hospital refunding bonds and the hospital bonds are, under section 44-5 of the Revised Cities and Villages Act, payable out of the hospital fund, levied under the authority of section 44-1; and that such bonds must be paid out of the funds realized from the additional rate of .1666, authorized by section 44-1. The collector contends that taxes for the payment of the bonds may be extended in addition to the rate of .1666 extended for hospital purposes under section 44-1. He argues that when the city issued the hospital refunding bonds and the hospital bonds, the constitution required that it levy a tax sufficient to pay the amounts thereof within twenty years; that this levy is the authority of the county clerk to extend the taxes; that the bonds being obligations of the city, it was the duty of the county clerk to extend taxes in an amount sufficient to pay the bonds with interest as they matured, wholly independent of the additional levy authorized by section 44-1, to raise taxes for the purpose of creating a hospital fund. In other words, cross appellant's position is that in addition to the

maximum levy authorized by statute for general corporate purposes, the city had the right to levy and cause to be extended for the hospital fund, under section 44-1, a rate of .1666 and, in addition to both of those rates, whatever amount was necessary to pay the maturing bonds and interest. He further contends that the taxes extended for the hospital fund and the taxes extended for the payment of bonds and interest are two separate and distinct taxes, and that both were properly levied and extended in addition to the rate extended for general corporate purposes.

It is true that section 12 of article IX of the constitution requires that when a city issues bonds it shall provide for the collection of a direct annual tax sufficient to pay the interest and discharge the principal thereof. There is no complaint that this provision was not complied with. Such levies were made and were on file in the office of the county clerk as required by law. Obviously, taxes for the payment of the bonds could be extended by the county clerk, and the amount which could be extended for that purpose was not subject to any limitation. The real question here is not the right to levy taxes for the payment of bonds and interest. That right is conceded. The question is whether, having levied an amount for the payment of bonds and interest over and above the maximum statutory rate which could be lawfully extended for general corporate purposes, the city could still levy the rate of .1666 for hospital purposes, authorized by section 44-1. We think it is clear that the legislature in granting authority to municipalities to levy an additional rate of .1666 for hospital purposes, intended that this additional rate should include all taxes levied for the payment of bonds and interest, issued for hospital purposes. By section 44-1 the money collected from the taxes extended at the additional rate of .1666 is designated as "Hospital Fund." Section 44-5 expressly declares that all bonds issued by a

city for hospital purposes shall be payable out of taxes collected for such purposes.

As to the item for the payment of hospital refunding bonds, our attention is called to sections 17-6 and 17-7 of the Revised Cities and Villages Act, (Ill. Rev. Stat. 1945, chap. 24, pars. 17-6 and 17.7.) Section 17-6 authorizes municipalities to issue refunding bonds. Section 17-7 provides that taxes levied to pay refunding bonds shall "be in addition to and exclusive of the maximum of all other taxes authorized to be levied," and that tax limitations applicable to municipalities provided by any statute shall not apply to taxes levied for the payment of such refunding bonds. Section 44-1 provides that taxes levied for hospital purposes shall constitute the "Hospital Fund." Section 44-5 provides that all bonds issued for hospital purposes shall be paid out of the "Hospital Fund" created by section 44-1. All of these sections which were re-enacted at the same time as a part of the Revised Cities and Villages Act must be construed together, and, if possible, each given effect. Sections 17-6 and 17-7 are general in their language, and they apply generally to all refunding bonds issued by a municipality. Section 44-5 applies specially to hospital bonds. The well-settled rule of statutory construction is that where there is found in a statute a particular enactment, it is held to be operative as against the general provisions on the subject either in the same act or in the general laws relating thereto. (*Ashton v. County of Cook*, 384 Ill. 287; *Frank v. Salomon*, 376 Ill. 439.) Under this rule the specific provisions in section 44-5 must prevail over the general provisions of section 17-7.

The county clerk, therefore, had the right, and it was his duty to extend taxes for the purpose of paying the maturing bonds and interest, in whatever amount was necessary, in excess of the taxes extended for general corporate purposes of the city. However, in determining

the amount for which taxes could be extended in addition to the general corporate rate, as authorized by section 44-1, it was his duty to deduct, from the amount which would be produced by the rate of .1666, the amount of taxes extended for the payment of bonds and interest. In other words, after deducting the amount to be extended for the payment of bonds issued for hospital purposes and the interest thereon from the amount which could be extended as an aditional tax for hospital purposes under section 44-1, the balance remaining determined the amount for which the additional taxes could be extended for that purpose. Any other construction would nullify and completely ignore the positive language in section 44-5, which provides that bonds issued by a city for hospital purposes shall "be payable out of the taxes to be collected for hospital purposes."

While the objections would have been more technically accurate had they been directed against a part of the taxes extended in the .1666 rate as excessive, the result is the same. The objections should have been sustained to that part of the .1666 rate, equal to the amount extended for the payment of hospital bonds and interest. Nevertheless, the court having reached the same result, the judgment, in this respect, will not be disturbed.

The final objection of the collector on the cross appeal is the action of the court in sustaining the objections to two items contained in the levy for building purposes for School District No. 71. These items are designated in the levy as, "Janitors Salaries $48,096.00," and "Engineers Salaries 3000.00." Section 189 of the School Law, as it existed at the time the levies here involved were made, is applicable. (Ill. Rev. Stat. 1943, chap. 122, par. 212.) That section authorizes school districts having less than 200,000 inhabitants to levy taxes for "educational purposes" and for "building purposes and the purchase of school grounds." This section in substantially the same

form has been in force for many years. .It has been uniformly held that an item of expense properly classified as an educational purpose cannot be included in the levy for building purposes and, conversely, an item properly classified as a building purpose cannot properly be included in a levy for educational purposes. (*People ex rel. Toman* v. *Chicago Great Western Railroad Co.* 379 Ill. 594; *People ex rel. Reeves* v. *Bell,* 309 Ill. 387.) In *O'Day* v. *People ex rel. Kinsey,* 171 Ill. 293, the taxes objected to included an item, in the amount levied for building purposes, for janitor service. In holding that this and other items included in the levy for building purposes were improperly included therein, we said: "The proper construction of this statute is, that the words 'for building purposes' are special, and apply solely to the building of school houses and matters incident thereto, while the words 'for educational purposes' are general, and apply to all matters for which a board of directors may levy school taxes."

In *People ex rel. Reeves* v. *Bell,* 309 Ill. 387, the term "building purposes" was defined in the following language: "The authority to levy a tax for building purposes is intended to provide for the needs of the district for building, repairing and improving the school house and property for the ensuing year and not to provide a fund for possible future needs. The expenses of the district for educational purposes cannot be paid out of a tax levied for building purposes but the tax levied for building purposes must be expended for that purpose, only."

In *People ex rel. Schlaeger* v. *Reilly Tar & Chemical Corp.* 389 Ill. 434, after reviewing the history of the section of the statute under consideration, and many cases construing it, we said: "From a review of the legislation on the subject and earlier decisions, it appears that building fund taxes can be levied only (1) for the purpose of building, repairing and improving school houses and for

purchasing school lands, and (2) for expenses or obligations incurred for the improvement, repair or benefit of school buildings and property. Educational fund taxes can be levied (1) for the purpose of procuring furniture, fuel, libraries and apparatus and (2) for meeting all necessary incidental expenses of every kind, character and description other than expenses payable from the building fund, as prescribed by statute, (or from certain special funds, namely, the free textbook, playground, or teachers'-pension fund.)"

It is so obvious that janitors' services and engineers' services are incidental to the operation of a school, rather than to the building of a school building, as to scarcely admit of argument. Such expenses cannot properly be included in a levy of taxes for building purposes and extended as such. The above cases, and many others which might be cited, are conclusive on this question. The court properly sustained the objections to these items.

The judgments of the county court are, in all respects, affirmed, except as to the item of $500 for "Care of transient paupers" and the item of $5000 for "Contingent expense," contained in the county levy. As to those items, the judgments are reversed. The cause is remanded to the county court of Champaign county with directions to sustain the objections to said item of $500 for "Care of transient paupers" and deny judgment for the taxes extended for that purpose. As to the item of $5000 for "Contingent expense" in the county levy, the court is directed to overrule the objections and enter judgment for the taxes extended for that purpose.

*Affirmed in part and reversed in part*
*and remanded, with directions.*