(No. 43297.—

THE PEOPLE *ex rel.* Dean Sweet, County Collector, Appellant, *vs.* CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Appellee.

*Opinion filed April 1, 1971.*

146

RICHARD A. HOLLIS, State's Attorney of Springfield, and ROBERT A. STUART and ELIZABETH G. FRAZEE of BROWN, HAY & STEPHENS, of Springfield, (STANLEY THOMAS, Assistant State's Attorney, of counsel,) for appellant.

NAFZIGER & OTTEN, of Springfield, (W. KNOLES LAIRD, of counsel,) for appellee.

Mr. JUSTICE DAVIS delivered the opinion of the court:

This is an appeal by the treasurer and *ex officio* county collector of taxes of Sangamon County, herein called the Treasurer, from those parts of an order of the circuit court of that county which sustained various objections to portions of the 1965 taxes paid under protest by the Central Illinois Public Service Company, herein called the objector. The parties submitted the case to the court upon a stipulation of facts. Since the revenue is involved, the appeal is directly to this court. Supreme Court Rule 302(a) Ill. Rev. Stat. 1967, ch. 110A, par. 302(a).

The eight objections raised by the objector can be placed in four different categories for the purpose of determining their validity.

The objector has charged that certain appropriations of the city of Springfield, the Springfield Sanitary District,

and Sangamon County were not itemized as required by law so as to sufficiently inform the taxpayer of the purposes of the appropriations, and, consequently, were void. The objections falling within this category and the amounts appropriated were:

> *City of Springfield*
> General Corporate purposes
> Industrial Development Commission
> Industrial Development Studies
> (expenditures to be made only upon
> approval of City Council in accord-
> ance with any contracts made) . . . . .$ 5,000.00
> Plan Commission
> Payment to Regional Plan Commis-
> sion for Planning Services to City
> under contract . . . . . . . . . . . . . . . . . 31,079.00
> Police Department
> Capital Improvements
> Building and Grounds. . . . . . . . . . . 12,000.00
> General City Administration
> Emergency Snow and Ice Removal
> from City Streets—Expenditures
> to be made only upon specific ap-
> proval of Finance Department. . . 24,000.00
> Library Development and Expansion
> Fund . . . . . . . . . . . . . . . . . . . . . . . 40,000.00
> *Springfield Sanitary District*
> Permanent Improvements
> (a) Plant Improvements . . . . . . . . . . . 10,000.00
> (b) Pumping Station Improvements. . 2,000.00
> (c) Sewer Extensions and Improve-
> ments . . . . . . . . . . . . . . . . . . . . . . 10,000.00
> *Sangamon County Regional Plan Com-*
> *mission* . . . . . . . . . . . . . . . . . . . . . . . . . 6,000.00

In *People ex rel. Schlaeger* v. *Reilly Tar & Chemical Corp.*, 389 Ill. 434, 437, 438, we held that the taxpayer has

a right to have stated separately the purposes for which public money is appropriated, and that a levy which is not sufficiently definite to inform him of the purpose for which tax money is to be spent is invalid. However, the corollary of this rule, equally well settled, is that the specification of each particular item of expense for which a levy is made is not required. A single general purpose is sufficient to include every appropriate expenditure required, although there be many items. (Also see: *People ex rel. Lindheimer* v. *Hamilton*, 373 Ill. 124, 130, 131; *People ex rel. Schaefer* v. *New York, Chicago and St. Louis Railroad Co.*, 353 Ill. 518, 520, 521.) This is especially true where it is difficult to determine, in advance, the exact amount of the various items. Itemization requirements must be accorded a common-sense construction. *People ex rel. Toman* v. *Estate of Otis*, 376 Ill. 112, 117.

An application of these principles of law requires that the itemization objections to the levies heretofore listed should have been overruled. Additional support for this viewpoint is found in certain statutory enactments. The purposes of the appropriation for the Regional Plan Commission and its expenditures are limited in accordance with section 2 of the Regional Planning Act. (Ill. Rev. Stat. 1965, ch. 34, par. 3002). Also, the appropriation for the Library Development and Expansion Fund is similarly controlled by a statute which authorizes the fund and circumscribes its expenditure. (Ill. Rev. Stat. 1965, ch. 81, par. 5—7.) The purposes for which funds may be accumulated for a public library are detailed in the statute, and reserve funds cannot be validly spent for any purpose other than those there specified.

Because of this statute, the general rule against the unnecessary accumulation of funds by a taxing body is not applicable to public libraries. *People ex rel. Brenza* v. *Morrison Hotel Corp.*, 4 Ill.2d 542, 547-549.

The objector also contends that an appropriation ap-

pearing in the County General Fund tax levy, as follows: "Fees Services Rendered Sangamon County By County Officers—Sheriff's Deficiency Fees—$29,388.00," is illegal. It urges that the compensation for the sheriff is fixed under section 10 of article X of the constitution; that the sheriff is limited to charging the county for only those services which he renders the county under section 19 of the Fees and Salaries Act (Ill. Rev. Stat. 1965, ch. 53, par. 37,) and that no item entitled "Sheriff's Deficiency Fees" appears within the said statute. It is agreed by both the Treasurer and the objector that the sheriff may properly collect fees from the county for duties performed relating to servicing the courts, patrolling the public highways, and for all other services specified in the above statute. The Treasurer urges that there can be no misunderstanding of the purpose of this item since it was listed under the general heading of "Fees Services Rendered Sangamon County By County Officers." He concludes that this means that none of the fees so charged by the sheriff were applied to his compensation.

Section 10 of article X provides that the county board shall fix the compensation of all county officers, along with the amount required for other necessary office expenses, and that in all cases where fees are provided for, the compensation shall be paid only out of and shall not exceed the fees actually collected. It further provides that all fees or allowances in excess of their compensation, shall be paid into the county treasury. We assume that the sheriff followed this constitutional provision and paid over to the county all of his fees in excess of his compensation and expenses. If after so doing, the county remained indebted to the sheriff for services rendered pursuant to the provisions of the applicable statutes (Ill. Rev. Stat. 1965, ch. 75, pars. 1, 2, 3, 13, 16, 24; and ch. 53, pars. 37, 69), it would then be proper for the county to appropriate funds to pay for these authorized charges and services. The county, as an individual or busi-

ness entity, must pay for the statutory services rendered by the sheriff.

We considered this matter generally in *People ex rel. Heuer* v. *Chicago Burlington & Quincy Railroad Co.*, 377 Ill. 470, and at pages 480 and 481 we stated: "The last of these items to be considered is 'Sheriff, per diem attending County and Circuit Courts, $5500'. In *People* v. *Foster,* 133 Ill. 496, the per diem allowed (Ill. Rev. Stat. 1939, chap. 53, par. 37, p. 1657) for attendance by the sheriff or a deputy at the sessions of the circuit and county courts was held to be a fee rather than compensation. * * * The county board had a right to levy to pay these fees because the statute authorized their payment out of the county treasury. In spite of the fact that the sheriff had to record their payment just as he did all money he received and could not receive more than his compensation as fixed by the constitution and the county board, nevertheless, the levy is valid. There is no showing that the board abused its discretion or that the amount was so grossly in excess of what would be required that it amounted to fraud in law." Consequently, the trial court erred in sustaining the objection to this levy. See: *People ex rel. Goodman* v. *Wabash Railroad Co.,* 395 Ill. 520, 529, 530.

Another category of objections relates to the levy by the city of Springfield for street and bridge purposes. This objection turns upon an interpretation of sections 162a and 162b of the Revenue Act. Ill. Rev. Stat. 1965, ch. 120, pars. 643a and 643b.

As stipulated by the parties, application of the formula provided in section 162a, as amended in 1967, established a rate for the city of Springfield of .59% for street and bridge purposes. Sections 11—81—1 and 11—81—2 of the Municipal Code of 1961 (Ill. Rev. Stat. 1965, ch. 24, pars. 11—81 —1 and 2) permit a tax of not to exceed .06% on all of the taxable property in the city, for street and bridge purposes.

It further authorizes, with the consent of three fourths of the members of the city council of a municipality, an additional and further levy not to exceed .04166% of such taxable property. Pursuant to this statutory authority, the city of Springfield extended a rate of $0.1007 for the year 1965 for street and bridge purposes.

The Treasurer justifies reference to the Municipal Code for its rate increase for street and bridge purposes by citing section 162b of the Revenue Act, wherein it is provided that the maximum fund rate established under sections 162a and 162b of the Act may be changed *"as provided by law."* He argues that this language was intended by the legislature to incorporate by reference exceptions or changes provided in other statutes, and in particular those changes set forth in the sections of the Municipal Code cited above. There is authority for such a construction. In *People ex rel. Rose* v. *New York Central Railroad Co.,* 22 Ill.2d 266, 280, we stated that "It is well settled that an act, complete in itself, may incidentally modify or amend other statutes without violating section 13 of article IV, and that it is not necessary, when a new act is passed, that all acts it modifies by implication be re-enacted and republished at length." Also see: *People ex rel. Nordstrom* v. *Chicago and North Western Railway Co.,* 16 Ill.2d 264, 268.

In *Anderson* v. *City of Park Ridge,* 396 Ill. 235, we fully considered the purpose and constitutionality of section 162a. That section of the Revenue Act was enacted for the purpose of avoiding unequal and excessive tax increases following the establishment by the legislature of means to acquire tax uniformity in assessments. It was also a temporary measure to allow taxing bodies to adjust their local tax limits by referendum. After certain amendments to section 162a, which changed both the formula for establishing a rate limit and extended the temporary time period of its effect, section 162b was added to the Revenue Act. It prescribed a procedure for establishing maximum tax rates for

each tax fund by all taxing districts affected. Each district was required to pass an ordinance or resolution establishing the maximum permissible tax rate, and if the rate so fixed was not greater than the tax rate limit in effect for such fund, such rate went into effect immediately without referendum. If the rate adopted was greater than the maximum rate in effect, then, subject to certain exceptions, a referendum would be necessary to approve the increase. The legislature then provided against the contingency of nonaction by certain tax districts and set maximum rates for such districts.

Section 162b further provides that after such maximum rate is established, it may be changed under the provisions of section 162a(2), or *as provided by law*. The enactment of section 11—81—1 and 2 of the Municipal Code fall within the provisions of section 162b *as provided by law*. Thus, the Treasurer contends, and we agree, that the city of Springfield by a three-fourths vote of its city council, had a right to levy .06%, plus an additional rate of .04166%, for streets and bridges for 1965 as determined by section 162b of the Revenue Act and by sections 11—81—1 and 2 of the Municipal Code. The propriety of this method of increase in rate under the statutes in question is indicated by our decision in *People ex rel. Ross* v. *Chicago, Burlington and Quincy Railroad Co.,* 411 Ill. 167. At page 170, we stated: "Without attempting an exhaustive list of instances in which a normal rate may be increased to a maximum rate by a method other than referendum, it is sufficient to refer to the provision which authorizes an increase in the normal city and village tax rate for street and bridge purposes by a three-fourths vote of the city council or board of trustees, (Ill. Rev. Stat. 1947, chap. 24, par. 696a,) * * *." We conclude, therefore, that the city of Springfield's levy for streets and bridges was legal, and that this objection should have been overruled by the trial court.

A further category of objections involves two tax levies

which the objector claims are invalid because they exceeded the maximum statutory rate limit. These levies were made by the county of Sangamon for Civil Defense in the sum of $6,727, and for Veterans Assistance in the sum of $10,251. These levies were made pursuant to appropriate statutory authority. Each statute provides that these taxes may be imposed "in addition to and in excess of the amount authorized to be levied for General Corporate purposes." The Civil Defense levy was authorized by section 13 of the Civil Defense Act (Ill. Rev. Stat. 1965, ch. 127, par. 281), and the Veterans Assistance levy by section 28a of the Counties Act (Ill. Rev. Stat. 1965, ch. 34, par. 506). Each litigant agrees that the statutory language "in addition" to all other county taxes did not remove the statutory rate limitation imposed on the county, and that additional rates for these purposes had not been authorized by referendum. They differ, however, on their interpretation of sections 162a and 162b of the Revenue Act. Ill. Rev. Stat. 1965, ch. 120, pars. 643a, 643b.

Sangamon County levied taxes for 1965 at the rates of $0.0012 for Civil Defense, and $0.0019 for Veterans Assistance. That year the tax rate for general county purposes was $0.085, which was the maximum rate established by the formula provisions of section 162a of the Revenue Act. Section 25.05 of the Counties Act set the maximum statutory rate for the general county purposes at $0.125% of the fair cash value of the property within its boundaries. (Ill. Rev. Stat. 1965, ch. 34, par. 406.) The addition of Civil Defense and Veterans Assistance rates, authorized by the aforesaid statutes which were enacted after section 162a of the Revenue Act went into effect, increased the maximum rate set under the formula provisions of section 162a of the Revenue Act, but did not exceed the statutory rate of $0.125 for counties as authorized by section 25.05 of the Counties Act.

The objector contends that a referendum was necessary

to increase the rate of $0.085. The Treasurer urges that a referendum is required only if the overall county rate, as increased by the two new taxes, exceeded $0.125.

In 1965, section 25.05 of the Counties Act, which provided the maximum county rate, was amended by two bills. House Bill 1324, passed June 29, 1965, set the maximum county rate at .125%, but contained no provision for increase in the rate by the county board without referendum. It provided that counties having a population of 300,000 or less inhabitants are subject to the General Revenue Law. Senate Bill 1058, passed June 29, 1965, likewise set the maximum county rate at .125% of the full fair cash value of the property in the taxing district, and further provided:

"The foregoing limitations upon tax rates, insofar as they are applicable to counties having less than 500,000 inhabitants, are subject to the provisions of the General Revenue Law of Illinois. However, in any county having 15,000 or more, but less than 200,000 inhabitants, the county board may, without referendum, increase by not more than .02% the maximum rate, applicable on the effective date of this amendatory Act of 1965, at which it levies taxes for general county purposes; provided that such maximum rate shall not be raised by more than .01% in any one year and in no event shall such increase raise such rate above .125%. In any county having 200,000 or more but fewer than 500,000 inhabitants, the county board may, without referendum, increase by not more than .03% the maximum rate, applicable on the effective date of this amendatory Act of 1965, at which it levies taxes for general county purposes; provided that such maximum rate shall not be raised by more than .02% in any one year and in no event shall such increase raise such rate above .125%."

For the purposes of this opinion we need not determine the priority of passage in connection with the adoption of either of these amendments since each sets forth the maximum tax rate for county purposes at .125% and further

provides that counties having a population of less than 500,000 inhabitants (Senate Bill 1058), and 300,000 (House Bill 1324) are subject to the provisions of the Revenue Act. Thus, under the "as provided by law" provision of section 162b of the Revenue Act, the county rate for general purposes was changed by the provisions of section 13 of the Civil Defense Act and by the provisions of section 28a of the Counties Act (Ill. Rev. Stat. 1965, ch. 34, par. 506) with reference to Veterans Assistance.

The rate for general county purposes and for Civil Defense and Veterans Assistance, when added together, did not exceed the permitted .01% increase for the year 1965, and when added to the old rate of .085, did not exceed .125%. Therefore, we hold that the statutory authority cited above clearly authorized the levying of these taxes without a referendum, and that the trial court erred in sustaining this objection.

The final category of objections involves two levies for pension funds—the city of Springfield for its Police Pension Fund, and School District No. 186 for its Municipal Retirement Fund.

With respect to the police pension fund, it is conceded that the city council of Springfield adopted an ordinance in 1951 establishing a maximum rate for the fund of $0.0146. Without repealing that ordinance, and without a referendum authorizing an increase, a rate of $0.0915 was extended in 1965. The objector claims the new rate was void for failure to repeal the old; that the pension fund rate was controlled by sections 162a and 162b of the Revenue Act, and that since the city of Springfield set a rate in 1951, it cannot increase that rate without a referendum. However, the applicable statute requiring the levy of a tax for police pension funds purposes is mandatory, allows no discretion, and requires the city to levy a tax at a rate which will produce a sum sufficient to satisfy the annual requirements of the

police pension fund. Ill. Rev. Stat. 1965, ch. 108½, par. 3—125; *People ex rel. Kroner* v. *Abbott,* 274 Ill. 380, 388.

We believe that this tax rate is likewise in the category of being *as provided by law* pursuant to section 162b of the Revenue Act, in the same manner as the tax rate for street and bridge purposes heretofore decided. Since the levy is required by another statute, the limitations of section 162b will not apply. Thus, the court should not have sustained the objection to this levy by the city of Springfield for its police pension fund.

The appropriation and levy of the Board of Education for School District No. 186 for its retirement fund is challenged for the reason that it is in an amount substantially larger than the average amount contributed during the preceding three years. The taxpayer contends that an excess levy exists which is illegal. The Illinois Municipal Retirement Act (Ill. Rev. Stat. 1965, ch. 108½, par. 7—101 through 7—221) imposes no limit upon the rate which the school district may levy for its retirement fund, and the Act generally, and section 7—171 particularly, require the district to levy a tax sufficient to meet its required contributions. (Ill. Rev. Stat. 1965, ch. 108½, par. 7—171.) In connection with this levy, the sole objection was that it was excessive because it was substantially larger than the contributions for the three preceding years. The levy for 1965 was $166,000. The contributions for the three preceding years were: 1963—$118,174.34, 1964—$121,665.84, and 1965—$114,102.26. From these facts, the trial court held that the amount of the levy above the average contribution for the last three years, was excessive.

We do not believe that the objector by this evidence alone overcame the presumption that authorities, in levying taxes, properly discharged their duties. This was its obligation if this tax objection was to be sustained. While taxing bodies may not levy taxes in excess of their needs and

thereby unnecessarily accumulate money in the public treasury, they need not wait until the money is actually required to pay outstanding obligations before levying the tax. Public policy permits such bodies to maintain sufficient funds in their treasury to meet their indebtednesses as they become due. The estimation of the amount required to meet the obligations of a taxing district for pension purposes is ordinarily committed to its reasonable discretion, and courts will not disturb the exercise of sound business judgment, except where there is a clear abuse of discretion. (*People ex rel. Kramer* v. *Chicago, Burlington and Quincy Railroad,* 8 Ill.2d 382, 387.) From the facts presented, we find no abuse of discretion by the School District in connection with this levy.

In *People ex rel. Brenza* v. *Morrison Hotel Corp.,* 4 Ill.2d 542, 553, 554, a similar objection was raised and overruled on the basis that the mandatory requirements of the above statute demand that objections to the levy for pension fund purposes should not be sustained in absence of an abuse of discretion of the levying district. Thus, we find that the circuit court erred in sustaining this objection.

The judgment of the circuit court in sustaining objections to the aforesaid tax levies is reversed.

*Judgment reversed.*