(No. 29986.—

GRACE ANDERSON, Plaintiff-Appellant, *vs.* THE CITY OF PARK RIDGE *et al.,* Appellees.—(TAXPAYERS' FEDERATION OF ILLINOIS, Intervenor-Appellant.)

*Opinion filed March 12, 1947.*

Scott, MacLeish & Falk, (Robert ' S. Cushman, and Robert C. Keck, of counsel,) all of Chicago, for plaintiff-appellant; Maurice W. Scott, of Springfield, for intervenor-appellant.

William J. Tuohy, State's Attorney, (Jacob Shamberg, of counsel,) both of Chicago, for appellees Michael J. Flynn *et al.;* Marshall S. Howard, of Chicago, for appellee the City of Park Ridge; John J. Bresee, of Urbana, for *amicus curiae;* Zimmerman & Norman, of Chicago, and Giffin, Winning, Lindner, Newkirk & Jones, (Montgomery S. Winning, of counsel,) both of Springfield, for intervenor-appellee Illinois Association of School Boards.

Mr. Justice Murphy delivered the opinion of the court:

Plaintiff-appellant, Grace Anderson, is a resident of Cook county and owns real estate located in the city of Park Ridge. Such property is subject to general taxation, including the tax for the general corporate purpose fund of the city, which is the only tax specifically mentioned in the pleadings. This action was started in the circuit court of Cook county in November, 1946, to enjoin the county clerk of Cook county from extending a certain part of the city tax levied for general corporate purpose for 1946, and to enjoin the county treasurer and *ex-officio* county collector of that county from collecting the same. The city, the county clerk and the treasurer, as the *ex-officio* collector of taxes, were made parties defendant. Before the decree was entered the Taxpayers' Federation of Illinois obtained leave to intervene and appeared as a party plaintiff. The Illinois Association of School Boards was also granted leave to intervene, but it appeared as a party defendant. The Illinois State's Attorney's Association was given leave to appear as *amicus curiae.* Motions of the city of Park Ridge, the county officials, and the Associa-

tion of School Boards to dismiss were sustained. Plaintiff elected to stand by her complaint and the suit was dismissed for want of equity. Plaintiff and the taxpayers' federation filed separate notices of appeal. The revenue being involved the cause comes direct to this court.

The first two subparagraphs of the prayer of plaintiff's complaint ask for a declaratory judgment, declaring that the extension of the 1946 corporate fund taxes for the city is controlled and limited by the provision of paragraph 2 of section 162a, added in 1945 to the Revenue Act of 1939, (Ill. Rev. Stat. 1945, chap. 120, par. 643a,) and that the maximum corporate fund tax rate to be employed in extending the tax against plaintiff's property is the rate required to produce the sum of $70,025 when applied to the city's 1946 100-percent assessment.

The third paragraph of the prayer is an alternative to the two preceding paragraphs. It asks that the county clerk of Cook county, whose duty it was to extend the corporate fund tax for the city of Park Ridge, be perpetually enjoined from extending the tax in question in excess of a rate required to produce the sum of $70,025 when applied to the 1946 100-percent assessment. Similar relief was asked against the county treasurer to enjoin him as collector from collecting corporate fund taxes in excess of the said sum of $70,025.

Although defendants do not question plaintiff's right to have a declaratory decree entered, it is proper to consider whether the court assumed jurisdiction to grant relief under the part of the prayer asking for a declaratory decree or that part which invokes the general power of a court of equity to enjoin the extension and collection of an illegal tax, or by a combination of both.

In *Knopf* v. *First Nat. Bank,* 173 Ill. 331, the contention was made that equity had no jurisdiction in an action brought by a single taxpayer to enjoin the extension of an illegal tax in its entirety. It was argued that the bur-

den of the tax, if extended, was separate as to each taxpayer and his property and that there was nothing in common in the tax which permitted a single taxpayer to have any part of the illegal tax enjoined except that which applied to his particular property. After a review of many cases, it was said: "They settle the law as to the jurisdiction of courts of equity in this State, and as to the right of a taxpayer or a number of taxpayers to enjoin the extension or collection of an entire tax that is unauthorized and void." The same principle was applied in *Green* v. *Mail,* 362 Ill. 518, where only twenty-six taxpayers sought the injunction against the illegal tax.

The following facts are pertinent to this inquiry in reference to the character of the relief prayed. The city's appropriation and tax-levy ordinances asked for $90,000 for general corporate fund purposes. The theory on which plaintiff's complaint was drawn concedes that of this amount the city is entitled to have a rate applied to the 1946 100-percent assessment that would produce $70,025. In reference to its power to tax for such purposes, the city makes two contentions. First, it is argued that section 162a is unconstitutional. If such contention were sustained, all the restrictions on rate imposed by section 162a, construction of which is involved in this case, would be removed and the city's maximum tax could be the 100-percent assessment times a rate of .333 per $100 assessed value. It is estimated that such rate would produce in excess of $130,000, but since the appropriation and levy was for but $90,000 the city would be limited to that amount. The city's second contention is that if the statute in question is constitutional then paragraphs 1 and 2 of the section should be construed to provide a rate which, applied to the 100-percent assessed value, would produce approximately $82,283. If the constitutionality of the section is sustained, the amount which plaintiff claims is about to be illegally extended would be the difference between

$70,025 and the estimate of $82,283. Plaintiff's contention as to such difference is that it is illegal and if extended would be without authority of law. Under the authority of the cases cited, a decree in favor of plaintiff could enjoin that portion of the tax which is illegal,—that which would produce approximately $12,000. Such facts are sufficient to warrant a court of equity in assuming jurisdiction of a case by one or more taxpayers. It would avoid the extension of an illegal tax and prevent a multiplicity of actions by the many taxpayers. On the facts stated, the cause will be considered as one asking for the general relief which a court of equity may exercise in preventing the extension of an illegal tax. The prayer, if granted, goes to only a part of the entire tax, but that is no obstacle to the granting of equitable relief if the illegal is capable of being separated from the legal. *People ex rel. Ryan* v. *Chicago and Alton Railroad Co.* 273 Ill. 452; *Siegfried* v. *Raymond,* 190 Ill. 424; *Briscoe* v. *Allison,* 43 Ill. 291.

The questions involved are of pressing public interest, for the rate to be applied in the extension of the 1946 taxes for every taxing district in the State, having a population of less than 500,000, must be determined by the processes prescribed in section 162a. An examination of section 57½ of the Civil Practice Act, (Ill. Rev. Stat. 1945, chap. 110, par. 181.1,) which was added in 1945, discloses that plaintiff could not obtain any relief under the declaratory judgment that is not available in the action to enjoin the illegal part of the tax. The general rule in other jurisdictions is that declaratory judgment actions brought for the purpose of having a declaration of rights in reference to tax matters cannot be sustained where there is another established remedy available. (See cases in annotation 132 A.L.R. 1120.) However, in either case the decree would not be *res judicata* as to anyone who was not a party to the action, but, in either event, the construction

given in this case will be binding on the parties to this proceeding and serve as a precedent and guide for those officials whose duty it is to extend the taxes.

The pertinent part of section 162a is as follows:

"The maximum percentages of full, fair cash value at which taxes may be extended are those set forth in the Constitution and in this and other Acts; provided that further restrictions shall apply to taxing districts of less than 500,000 population, as follows:

"1) During the five-year period beginning January 1, 1946 and ending December 31, 1950, unless changed by referendum as provided in paragraph 5 of this section, no tax rate shall be restricted to a percentage less than sufficient to yield an amount equivalent to the product of: (a) the full, fair cash value of the taxable property in the taxing district as equalized or assessed by the Department for the current year, (b) the 1942 ratio of assessed to full, fair cash value reported and published by the Department for the county in which the taxing district is situated, provided that if the taxing district lies in more than one county, the average ratio of assessed to full fair cash value shall be used, which average ratio shall be determined by the department and shall give effect to the relative full valuations of property in the areas of the taxing district situated in the two or more counties, and (c) the maximum tax rate applicable to taxes levied for the year 1945, or authorized for the year 1946 by a referendum held prior to January 1, 1946.

"2) During the five-year period beginning January 1, 1946, and ending December 31, 1950, unless changed by referendum as provided in paragraph 5 of this section, the greatest amount by which any tax rate may exceed the product of: (a) the 1942 ratio of assessed to full, fair cash value reported and published by the Department for the county in which the taxing district is situated, provided that if the taxing district is situated in more than

one county, the average ratio of assessed to full, fair cash value shall be used, which average ratio shall be determined by the Department and shall give effect to the relative full valuations of property in the area of the taxing district situated in the two or more counties, and (b) the statutory tax-rate limitation or rate authorized by referendum as effective for the levy and assessment year 1942 shall be 15 per cent; provided that in no one year during the afore-mentioned, five-year period shall the tax extension be increased to exceed 5 per cent of the maximum extendable in 1942. The provisions of this paragraph shall not modify any other restrictions upon maximum extendable tax rates. The restrictions herein provided shall be inapplicable to any established tax rate limit expressed in dollars. The restrictions herein provided shall be inapplicable to limit tax levies for which minimum qualifying rates are prescribed to establish eligibility to receive state grants for poor relief and equalization aid for educational purposes to less than such minimum qualifying tax rates."

The city of Park Ridge stated a ground in support of its motion to dismiss that was not included in the motions of the Illinois Association of School Boards or of the county officials. It is contended on behalf of the city that the act violates section 1 of article IX of the constitution. That section directs that the General Assembly shall provide such revenue as may be needed by levying a tax by valuation and that all property shall be valued so that every person and corporation shall pay a tax in proportion to the value of his, her or its property. It will be observed that the quoted parts of section 162a deal with rates and not with the assessment of property for taxation purposes. It is contended on behalf of the city that the provisions in section 162a which refer back to the 1942 ratio of assessed value to the full, fair cash value continue the evil which the statute was designed to correct and permit a result whereby one municipality, such as the city of Park Ridge,

is forced to one rate while another municipality, located in another county but otherwise similar, would have the power to tax at a different rate. There is no doubt there may be differences in rates between municipalities located in different counties, but differences in rates do not constitute a violation of the constitutional provision which demands that there be uniformity as to valuation so that every person and corporation will pay in proportion to the value of his, her or its property.

The power to levy taxes for the support of government is a necessary incident of sovereignty and is possessed by the State without being expressly conferred by the people. The power to determine the method by which property may be valued for tax purposes is in the General Assembly and is unlimited except as to the constitutional requirement that it shall be valued so that every person and corporation shall pay in proportion to the value of his, her or its property. *People ex rel. Campe* v. *Board of Review,* 290 Ill. 467.

The fixing of a rate to be used in the extension of taxes is a process separate and distinct from a determination of the value of property upon which the assessment is to be extended, so that, the provisions of section 162a being limited in their application to the fixing of rates, it cannot be said that it comes within the constitutional provision cited.

The object of construing a statute is to ascertain and give effect to the legislative intent and to that end the history of the legislation on the subject and the course it has taken are matters to be considered. (*People ex rel. Ward* v. *Chicago and Eastern Illinois Railway Co.* 365 Ill. 202; *Hays* v. *Illinois Terminal Transportation Co.* 363 Ill. 397; *People* v. *Day,* 321 Ill. 552.) It is proper not only to compare statutes relating to the same subject matter but to consider statutes upon related subjects though not strictly *in pari materia.* (*Chicago, Burlington and Quincy Railroad Co.* v. *Doyle,* 258 Ill. 624.) It is also proper to con-

sider the motive for making the changes in the law and the evils sought to be corrected. (*City of Rockford* v. *Schultz,* 296 Ill. 254.) It is a maxim in the construction of statutes that where two acts or parts of the same act are seemingly repugnant, they should be so construed, if possible, that both the repugnant provisions may stand. *People* v. *Shader,* 326 Ill. 145.

For several years prior to the enactment of section 162a and companion bills, the law directed that all property should be assessed for tax purposes at its full cash value. Notwithstanding the explicit command of the statute, a practice was followed whereby the assessing officers of the several counties fixed the assessed value at less than full value. The assessing officers of the several counties, acting independently of the officers of other counties, determined the ratio of assessed value to full value in their respective counties. The result was that there was a wide variance between the high and low ratios. When the State Tax Commission and its successor, the Department of Revenue, undertook to assess property within its taxing jurisdiction, such as railroad property which was located in several counties, it encountered the difficulty arising from such difference in ratios in the several counties. Some of the cases where such problems were encountered and came to this court are *People ex rel Prindable* v. *Union Electric Power Co.* 392 Ill. 271; *People ex rel. Hempen* v. *Baltimore and Ohio Railroad Co.* 379 Ill. 543; *Mobile and Ohio Railroad Co.* v. *State Tax Com.* 374 Ill. 75.

Following the decision in the *Mobile and Ohio case,* the General Assembly made a survey and study of the general taxing situation and particularly in reference to the uniformity in valuing property. Following such consideration, section 162a and companion bills were adopted. There is no doubt that in the adoption of such acts the General Assembly intended to correct the irregularities appearing in the assessment of property. The first objective was to change

the law to require a stricter compliance with the direction to value property at its full, fair market value. To accomplish this, local assessing officers were, as formerly, commanded to assess at full value. Section 146 was amended in 1945 to give the Department of Revenue greater power in its equalization work. It was given the power to lower or raise the total assessed value of property in any county as returned by the county clerk. (Ill. Rev. Stat. 1945, chap. 120, sec. 146, par. 627.) In a proper case it had the power to command a reassessment of property which had been assessed by local assessing officers. The duty was enjoined on the Department to annually ascertain and determine the percentage relationship for each county between the valuations at which property had been assessed by the local assessing officers as revised by the boards of review or boards of appeal, as the case might be, and the estimated full, fair cash value of such property.. To ascertain the full, fair cash value of property in any given county, the Department was empowered to determine it by comparison of assessed valuations as revised by boards of review and boards of appeal. In the determination of the full value of property in a particular county it was authorized to make estimates of full value by analysis of property transfers, property appraisals and such other sources as to the Department should seem proper and reasonable. The third paragraph of said section 146 provides that when the Department has ascertained and determined the ratio which the local assessed value of each county bears to the full, fair cash value it shall ascertain the amount to be added to or deducted from the aggregate assessment as fixed by the local assessing officers. The purpose as stated in the statute is "to produce a ratio of assessed to full, fair cash value equivalent to one hundred per cent." The result thus obtained is certified to the county clerk of the particular county and becomes the basis for the extension of taxes in that county for the year covered by the certificate.

An exhibit attached to the complaint in this case and made a part thereof sets forth the ratio of locally assessed property in each county to the full, fair cash value for each of the years 1942 and 1945 as determined by the Department. In 1942 the ratio varied from a low of 22 per cent in Lake county to a high of 73 per cent in Pulaski county. In 1945 the range of variance was from a low of 14 per cent to a high of 68 per cent. It was clear that an increase of the assessed value in the several counties to 100 per cent would result in increasing the taxes in the various taxing districts if the taxing authorities levied at the full rate. To illustrate, a school district located in a county with a ratio of 25 per cent of assessed value to full value and having an aggregate assessed value of $4,000,000 would, by the increase, have its assessed value advanced four times to $16,000,000. Conversely, a school district with an assessed value of $4,000,000, located in a county with a 70 per cent ratio would have its assessed value increased 1.428 times. Accordingly, the power to levy taxes would vary in the several counties in the proportion of the ratio of assessed value to 100-percent value.

The second step was the reduction of rates. Statutes which fixed the maximum rate for a particular class of taxing districts were amended, reducing each rate by 50 per cent. It is obvious that a taxing district located in a county with a 50-percent ratio would, if the assessed value was increased to full value and the rate reduced 50 per cent, have the same authority to raise the same amount of taxes after the change as before. The exhibit referred to discloses that there were only nine of the counties that had a 50-percent ratio in 1942 and none in 1945.

All real estate is valued for tax purposes once every four years. The last time there was such an assessment in counties not under township organization was in 1946, and in counties under township organization in 1943. The assessed value as fixed on any quadrennial assessment was

subject to change by local assessing officers during the four-year period by adding omitted property, by increased valuations caused by new buildings, or other improvements, by decreased valuations caused by fire, storm or other disaster. The facts shown disclose that the general trend of values has been upward, and, this being true, the trend of ratios of assessed to full value is downward.

The fluctuation of ratios produced by changes in assessed values was sure to create inequities in the amount of taxes that could be levied that could not be cured by a general 50-percent reduction in the rate. Section 162a was designed to balance such deficiencies. It was passed as a separate enactment and bears no title other than that it is an act to add section 162a to the Revenue Act of 1939. There is nothing in the body of the act other than the language used that indicates the particular conditions which the section was designed to correct or balance. In view of the other acts known as the Butler bills, which were passed as a series at the same session, it is clear that it was intended to serve as a check on rates, so that taxing districts in the State would be restricted in the amount of money that could be raised by taxation and, on the other hand, make it possible for taxing bodies to raise money for their respective districts.

Section 162a contains six numbered paragraphs, of which 1 and 2 are involved here. In the construction of section 162a, it should be noted that each of the several acts which reduced the rate of the particular taxing district by 50 per cent contained a proviso "that the foregoing limitations upon tax rates * * * are subject to the provisions of Sec. 162a of the 'Revenue Act of 1939' filed May 17, 1939 as amended." In short, any rate applicable to a particular class of taxing districts which had been reduced by 50 per cent was, by the proviso, made subject to any rate that might be processed by application of the formulas set forth in section 162a. In this sense, the formulas of

section 162a operated as a check or balance against conditions created by the change of assessed value from less than full market value to 100-percent assessment and a 50-percent reduction in the rate.

As previously stated, a taxing district in a county with a 50-percent ratio of assessed value to full value and a 50-percent reduction in the rate left the taxing district with the same power to levy and collect the same amount of dollars as before the law was changed. If all counties in the State had a 50-percent ratio accompanied by a 50-percent reduction in rates, there would be no need of paragraphs 1 and 2 of the section in question.

The first sentence of section 162a, that the maximum percentages of full, fair cash value at which taxes may be extended are those set forth in the constitution and in this and other acts, evidently refers to the 100-percent of full value. The further provision is that all taxing districts having a population of less than 500,000, shall, in the exercise of their powers of taxation, be subject to the restrictions set forth in section 162a. Any restrictions contained in paragraphs 1 and 2 restrict the rate at which taxes may be extended. The 50-percent reduction of tax rates as they apply to the various taxing districts has been mentioned. Reference will be made to such rate as the statutory rate, to distinguish it from the rates established by application of the formulas of paragraphs 1 and 2. In the analysis which follows no reference will be made to the referendum provisions of section 162a. There is nothing to indicate that the city of Park Ridge has a tax rate established by referendum.

The first sentence of paragraph 1, after stating the 5-year limitation period, contains the following: "No tax rate shall be restricted to a percentage less than sufficient to yield an amount equivalent to the product of: * * *." Three factors are named and the next step is to determine the product of such factors. These factors are: (a) the

full, fair cash value of the taxable property of the district as equalized or assessed by the Department for the current year; (b) the 1942 ratio of assessed to full, fair cash value as reported by the Department, and (c) the maximum rate at which taxes could have been levied in the particular district for the particular purpose during the year 1945. Applied to the facts submitted in reference to the general corporate fund of the city of Park Ridge, it would be $39,854,595 (estimated 100-percent value) times the 1942 ratio of Cook county in which the city of Park Ridge is located, such ratio being 31 per cent, times the maximum tax rate for general corporate purposes in the city in 1945, which was .666. The product of the three factors is $82,283. The rate when extended against the 100-percent assessment of $39,854,595 must be sufficient to produce an amount equivalent to the product of the three factors, that is, equal to $82,283. Such rate would be approximately .206. It will be observed that such formula is for the purpose of determining the minimum rate at which taxes may be extended.

In taxing districts in counties with a higher ratio between the assessed value and full value, the statutory rate may be lower than the rate determined by the product of the three factors given in paragraph 1. To illustrate: Assume a taxing district, located in a county with a 65-percent ratio between assessed and full value, with a property assessment at 100-percent valuation aggregating $400,000. Also assume that the maximum statutory tax rate in 1945 was .50 on the $100 assessed valuation. The product of the three factors specified in paragraph 1 would be $1300. The statutory rate for 1946 was .25 per $100 assessed valuation. Such rate applied to the $400,000 (100-percent valuation) would produce a tax of $1000, therefore, the minimum rate under the formula of paragraph 1, when applied to the $400,000 assessed valuation must be sufficient to produce a sum equal to $1300. A rate to produce

such an amount is .325. Thus the rate designated as the statutory rate of .25 is superseded by the formula rate of .325 under paragraph 1. The rate of .325 is declared to be the minimum rate but since there is no statute authorizing the use of a higher rate, it is the only rate to be applied in a district of comparable facts. This, of course, is without regard to modifying restrictions of paragraph 2.

We will now limit our consideration to that part of paragraph 2 which precedes the proviso and without regard to any effect the proviso may have on it. The statute directs that the greatest amount by which any tax rate may exceed the product of factor (a) times factor (b) is 15 per cent. Factor (a) is the 1942 ratio of assessed to full value as reported by the Department and (b) is the statutory rate limit for the particular district in 1942. As to the city of Park Ridge, the ratio in Cook county in 1942 was 31 per cent of assessed value to full value and the maximum statutory rate for the same year for corporate purposes was .666 per cent. The product of .31 and .666 would be .206. The statute is that the most by which any rate may exceed this product is 15 per cent. It deals with the maximum rate, but such maximum raises or lowers on the same ratio which the assessed value bears to the full value. The variance in the ratios as between the several counties was sure to create many problems for the taxing officers.

The proviso of paragraph 2 is that in no one year during the five-year period shall the tax extension be increased to exceed 5 per cent of the maximum extendable in 1942. The maximum statutory rate in the city of Park Ridge for general corporate purposes in 1942 was .666, and the assessed value of the property within the city limits was $10,013,715. The rate stated applied to the assessed value would produce a corporate fund tax of $66,691. As previously stated, this is approximately $20,000 less than the amount asked in the city's appropriation and tax-levy ordi-

nances. The minimum rate established by the formula of paragraph 1 applied to the 100-percent assessed value would produce a tax of $82,283.

Plaintiff contends the proviso controls over paragraph 1 and therefore reduces the tax to $70,025. Defendant contends the proviso is not a restriction on the rate established under paragraph 1 and that if so construed it would, as to the city of Park Ridge, render paragraph 1 a nullity. Thus the question is presented as to the effect of the proviso on the formulas prescribed in paragraphs 1 and 2 of the section.

The general office of a proviso is to except something from the enacting provision, to restrain or modify its generality or to exclude some possible ground of misinterpretation, or to prevent the enacting provision being extended to include something which was not intended to be brought within its purview. (*Wells Bros. Co.* v. *Industrial Com.* 285 Ill. 647; *In re Day,* 181 Ill. 73; *Huddleston* v. *Francis,* 124 Ill. 195.) Ordinarily its grammatical and logical scope would confine it to the subject matter of the enacting provision to which it is attached. (*United States* v. *Whitridge,* 197 U. S. 135, 49 L. ed. 696.) It is said in some of the cases that without something to indicate a different legislative intent it will be presumed that a proviso refers only to the provisions to which it is attached, (*United States* v. *Morrow,* 266 U. S. 531, 69 L. ed. 425; *United States* v. *Falk,* 204 U. S. 143, 51 L. ed. 411;) but such presumption is overcome when it appears that the lawmaking body intended that the restrictions or exceptions of the proviso should extend to the provisions of other paragraphs of the same statute. It may, if the intent is shown, be construed as a substantive act in itself. (*O'Connor* v. *Board of Education,* 288 Ill. 240; *In re Day,* 181 Ill. 73; *Stephen* v. *Illinois Central Railroad Co.* 128 Ill. App. 99.)

Application of these principles of construction would in the first instance lead to the presumption that the proviso

in paragraph 2 was intended as a restriction of that to which it is attached. It follows the formula for determining the maximum rate. It serves as a limitation on such formula. There is no language in the section to indicate that the General Assembly intended it should be construed as having a modifying effect or restriction on the minimum rates determined by application of the formula prescribed by paragraph 1. The object sought by the series of bills of which section 162a is a part negatives any presumption that the law makers intended the proviso should operate as a limitation to any part of the statute other than that to which it is attached. To give it the construction for which appellant contends is in effect to hold that in certain taxing districts the amount of tax the taxing districts may levy is to be determined on values of 1942, and this without regard to any increased valuation that may have been added since that year. The whole scheme of the several acts, including this section, evidences an intent to prescribe rates which, when applied to the 100-percent assessed value of 1946, or the current year for which it is being determined, will produce a tax sufficient to meet the needs of the district, and at the same time not be too burdensome on the taxpayers.

The proviso limits the tax extension in each district, so that, in each year during the five-year transition period, the tax extended shall not be increased to exceed 5 per cent of the maximum tax extendable in 1942. No doubt the year 1942 was adopted as being a year when tax rates, assessable values and financial needs of taxing districts were on a fairly normal basis. The product of the ratio of 1942 times the 1942 statutory tax limitation is in a sense the basic formula rate. This may be increased by 15 per cent, but the proviso limits the 15-percent provision so that the amount of tax increase in any one year shall not exceed the basic formula by more than 5 per cent of the maximum extendable in 1942.

As applied to the City of Park Ridge, the basic formula, or the ratio .31 (1942 ratio of assessed to full fair cash value) times .666 (statutory tax limitation for corporate funds purposes for 1942) equals .206. If such rate were increased by the 15-percent clause the rate would be .239. But the limitation is that the rate cannot be increased so as to produce a tax in any one year greater than the maximum extendable in 1942 plus 5 per cent. The basic formula rate .206 applied to the estimated 100-percent valuation for 1946, $39,854,595, would produce approximately $82,283. The maximum extendable tax in 1942 was $66,691. Five per cent of this would produce approximately $3300. This added to the product of the basic formula rate of .206 to the 100-percent assessed valuation of 1946 would produce the maximum tax that could be extended under the proviso for 1946. This would be approximately $85,300.

In view of the general purpose for which section 162a was adopted, we are of the opinion that the General Assembly intended that it should be construed as herein set forth. It is the function of the courts to ascertain the legislative intent. Courts do not have the power to give words a meaning which was not within the intent of the legislature, but if the intent is clear they are not confined to the literal meaning of the words. The maxim is, that a thing within the intention is regarded within the statute though not within the letter. A thing within the letter is not within the statute if not also within the intention. *Hoyne* v. *Danisch,* 264 Ill. 467; *Uphoff* v. *Industrial Board,* 271 Ill. 312.

For the reasons stated, the decree of the circuit court is reversed and the cause remanded with directions to proceed in accordance with the views expressed.

*Reversed and remanded, with directions.*