(No. 36310.

THE PEOPLE *ex rel.* Gene H. Rose, County Collector, Appellant and Cross Appellee, *vs.* THE NEW YORK CENTRAL RAILROAD COMPANY, Appellee and Cross Appellant.

*Opinion filed May 19, 1961.*

Robert W. McDonald, State's Attorney, of Urbana, (John J. Breese, of counsel,) for appellant and cross appellee.

Barth, Phillips, Phebus & Tummelson, of Urbana, (Enos L. Phillips, Darius E. Phebus, and Sarah M. McAllister, all of Urbana, and Marvin A. Jersild, and Ronald O. Decker, both of Chicago, of counsel,) for appellee and cross appellant.

Maurice W. Scott, and Robert S. Cushman, for Taxpayers' Federation of Illinois, *amicus curiae*.

Mr. Justice Daily delivered the opinion of the court: This is an appeal by the county treasurer and *ex officio* collector of Champaign County, and a cross appeal by the New York Central Railroad Company, which present an issue as to the maximum legal tax rates extendable in 1958 for six different funds in Champaign County. The revenue is involved, giving us jurisdiction of the direct appeal, and we have granted leave to the Taxpayers' Federation of Illinois to file a brief as *amicus curiae*.

Involved in the appeal by the collector are the maximum rates permissible in 1958 for the county general corporate fund, the county highway fund and the town of Urbana road and bridge fund. There is no dispute as to the facts, which have been stipulated, and the specific question, one·

of statutory construction, is whether the basic statutory rates authorized for each of these funds were, in 1958, subject to reduction or scaling down under what has been commonly referred to as the "formula" provision of section 162a of the Revenue Act. (See: Ill. Rev. Stat. 1945, 1947, 1949,. chap. 120, par. 643a.) In each instance the county clerk extended rates without regard to the provisions of the Revenue Act but, upon objection by the railroad, hereinafter referred to as defendant, the county court held the formula rate was the maximum legal rate that could be extended and sustained defendant's objections that the rates for these funds were excessive.

The collector prosecutes this appeal, contending in substance that the formula provision expired and was repealed prior to 1958, or, in the alternative, that section 162b of the Revenue Act, as amended in 1957, (Ill. Rev. Stat. 1957, chap. 120, par. 643b,) is an unconstitutional attempt to revive a repealed statute by its title, that the effect of sections 162a and 162b is to violate the constitutional provision which prohibits local or special laws, and that the same two sections have created such confusion in tax rate limits that this court should find them void for such reason.

The need under which section 162a was first enacted, its purpose and its constitutionality were all fully considered and expressed by this court in *Anderson* v. *City of Park Ridge,* 396 Ill. 235. What was said there need not be repeated here except to say, generally, that section 162a was intended to avoid unequal and excessive tax increases following the establishment of means to acquire uniformity in assessments, (Ill. Rev. Stat. 1945, chap. 120, par. 627,) and was likewise intended to be a temporary measure to allow local taxing units, or the taxpayers, to adjust their local taxing rate limits by referendum if they wished, prior to the end of the temporary period. As section 162a was originally enacted in 1945, this temporary period was fixed as beginning on January 1, 1946, and as ending on Decem-

ber 31, 1950. (Ill. Rev. Stat. 1945, chap. 120, par. 643a.) Insofar as this proceeding is concerned, however, we need concern ourselves with the development of section 162a, and its companion section 162b, from 1947 forward.

In 1947, section 162a was amended to provide for a slightly different formula provision for tax rate limitations and to extend the end limit of the temporary period to December 31, 1952. Generally, the new formula provided for a rate limit obtained by the product of the assessed valuation of the particular taxing district for 1945, multiplied by the maximum tax rate for that fund, divided by the 1946 full assessed valuation, then multiplied by 105%. (Ill. Rev. Stat. 1947, chap. 120, par. 643a.) When 1951 was reached, section 162a was again amended to provide that the formula limitations would expire on December 31, 1952, as to school districts having less than 500,000 inhabitants, and on December 31, 1953, as to the maximum rates for all other tax districts "unless modified by the provisions of Section 162b of this Act, or, unless changed by referendum" as provided in section 162a. Ill. Rev. Stat. 1951, chap. 120, par. 643a.

In the same year, 1951, section 162b was added to the Revenue Act. (Ill. Rev. Stat. 1951, chap. 120, par. 643b.) In the opening paragraph of the section the legislature spelled out its intent and purpose, saying: "The General Assembly hereby declares its intention that the maximum tax rate limitation for each fund of each taxing district in this State shall be established locally by the corporate authorities or by the voters of the taxing district in the manner and subject to the restrictions of this Section 162b, which is intended to provide the procedure for an orderly change from maximum tax rate limits imposed by the General Assembly to maximum tax rate limits established locally on the basis of local needs." Thereafter, subsection (1) exempted from the section taxing districts having a population of more than 500,000 inhabitants and certain school and other districts.

To effect the legislative purpose, the remaining subsections of section 162b then outlined the procedure to be followed by all districts affected in establishing, either by action or inaction prior to December 31, 1951, (with some exceptions,) maximum tax rate limits for each tax fund. Each taxing district was required to pass an ordinance or resolution, prior to December 31, 1951, establishing the maximum permissible tax rate limitation that could thereafter be extended for each of its funds subject to section 162b. If the district passed an ordinance or a resolution fixing the rate limit for a fund at a rate that was no greater than the tax rate limit in effect for such fund when the resolution or ordinance was adopted, such rate went into effect immediately without referendum. If, however, the rate adopted was greater than the maximum rate limit in effect on the date of the resolution or ordinance, it was necessary, with the exception of some funds not important here, to have a referendum approving the increase.

Providing against the contingency that some taxing districts might not adopt resolutions or ordinances one way or the other, the legislature then fixed the maximum tax rates for such funds as follows in subsection (8) : "If the corporate authorities of a taxing district fail to adopt the ordinance or resolution for the establishment of a maximum tax rate limit for any fund subject to this Section 162b at the time and in the manner prescribed in this Section 162b, then the maximum tax rate for such fund shall continue to be the maximum tax rate in effect for that fund on December 31, 1951, unless and until changed as provided in subsection (3) of Section 162a of 'The Revenue Act of 1939,' approved May 17, 1939, as amended."

By subsection (9) of section 162b, which is of particular importance here, the legislature then designated the method of determining rate limits in effect, either on December 31, 1951, or on the date the resolution or ordinance was passed, whichever the case might be, stating it would be one of the

following: (1) The tax rate limit for the fund of the taxing district authorized by any referendum held after January 1, 1946; (2) the tax rate limit authorized by the statute applicable to that fund if the fund was created after January 1, 1946; or (3) if the fund was in existence January 1, 1946, and an increase in the rate was not authorized by referendum held subsequent thereto, then the rate computed as provided by section 162a, as amended in 1947.

We digress for the moment to note that although the funds involved in this case were in existence on January 1, 1946, there have been no referenda for an increase in rates since that time, and neither did the taxing authorities adopt resolutions or ordinances as contemplated by section 162b. Since the taxing authorities failed to take any action prior to December 31, 1951, the language of the statute makes it clear that, as of that date at least, the maximum tax rate limit for the funds in question was the statutory rate as reduced by the formula prescribed in section 162a as it was amended in 1947. But we are concerned here with 1958 taxes and with the effect of amendments to sections 162a and 162b subsequent to 1951.

Legislation enacted in 1953 did not materially alter either section, and it is to be recalled that the formula provision of section 162a, by virtue of the amendment in 1951, was to expire by its own terms on December 31, 1953. However, in 1955, section 162a was amended to delete the formula for scaling down tax rate limits, but the provisions for increasing or lowering rate limitations by referendum were continued. (Ill. Rev. Stat. 1955, chap. 120, par. 643a.) At the same time section 162b was changed in form, to eliminate subsections, and was amended in pertinent part to provide: "The maximum permissible tax rate for each fund of each taxing district subject to this Section shall be the maximum rate applicable on the effective date of this 1955 amendatory Act until changed under the provisions of subsection (3) of Section 162a of this Act. * * *.

"In computing the tax rate limit in effect for a fund as of the date of the adoption of the ordinances or resolutions as formerly provided by this Section, or as of December 31, 1951, as the case may be, such tax rate limits shall be determined as follows: the tax rate limit for the fund of the taxing district authorized by any referendum held after January 1, 1946; the tax rate limit authorized by the statute applicable to that fund if the fund was created after January 1, 1946; or, if the fund was in existence January 1, 1946 and an increase in the rate was not authorized by referendum held subsequent thereto, then the rate computed as provided in Section 162a of this Act, as amended by an Act approved July 22, 1947." Ill. Rev. Stat. 1955, chap. 120, par. 643b.

In the absence of intervening referenda, we think this language of section 162b makes it clear that the rate limits for the funds in question remained as they had been on December 31, 1951, *viz.*, the statutory rate permissible for each fund as scaled down under the formula provision found in the 1947 amendment to section 162a. On the basis of our decisions in *People ex rel. Kramer* v. *Chicago Burlington and Quincy Railroad Co.* 8 Ill.2d 382, and *People ex rel. Bailey* v. *Illinois Central Railroad Co.* 407 Ill. 426, the collector interjects an argument at this point that when the legislature stated in section 162b that "The maximum permissible tax rate for each fund of each taxing district subject to this Section shall be the maximum rate applicable on the effective date of this 1955 amendatory Act * * *," it actually meant the statutory rate. Such an argument overlooks the distinction between "maximum rate" and "maximum permissible rate" made in the *Bailey case,* and fails to distinguish the fact situation present in the *Kramer case.* In *Kramer,* we were called upon to construe the subsection of section 162b; as contained in the 1951 act, providing for the establishment of rates by ordinance or resolution. We held that the words "tax rate limit in effect," as used in

subsection (3), referred to the statutory rate and not to the rate as debased under the formula, for the reason that, unless such a construction was intended, subsection (3) would permit no change from the formula rate and would be rendered meaningless. A different situation exists in this case where the taxing districts did not avail themselves of the opportunity to establish rates by ordinance or resolution. Here, unless the words "Maximum rate applicable" are construed to mean the rate as scaled under the formula provision of 1947, this provision of the statute would have been unnecessary and the legislature would merely have abolished section 162b.

Continuing with the history and evolution of the Revenue Act up to the time the taxes in the present case were extended, when the legislature convened in 1957, although inconsequential amendments were made, section 162a was in effect continued as amended by the 1955 revision. (Ill. Rev. Stat. 1957, chap. 120, par. 643a.) Section 162b was amended three times, one amendment approved July 6, 1957, providing: "The maximum permissible tax rate for each fund of each taxing district subject to this Section shall be the maximum rate applicable on July 14, 1955, [the date on which the 1955 amendment to section 162b, was approved,] until changed under the provisions of subsection (3) of Section 162a of this Act." As to the computation of rate limits as of December 31, 1951, section 162b continued to provide: "* * * if the 'fund was in existence January 1, 1946, and an increase in the rate was not authorized by referendum held subsequent thereto, then the rate computed as provided in Section 162a of this Act, as amended by an Act approved July 22, 1947." (Ill. Rev. Stat. 1957, chap. 120, par. 643b.) Again, we think it clear, and the collector does not contest it greatly or convincingly, that the plain language employed by the legislature from 1951 through 1957, consistent with the primary purposes of sections 162a and 162b, establishes, as the county court

found, that in the absence of some local action, the rate limit in effect for these particular funds in 1958 was the rate computed as provided in section 162a as amended in 1947.

The collector contends that section 162b, as constituted after the 1955 and 1957 amendments, is unconstitutional and void as an attempt to revive the 1947 formula provisions of section 162a by reference. (See: Constitution of 1870, sec. 13, art. IV.) To arrive at this conclusion he reasons that the formula provision was "repealed" in 1955, and that the subsequent amendments to section 162b, which provided that the rate limits were to be computed "as provided in Section 162a of this Act, as amended by an Act approved July 22, 1947," were "re-enactments" of the formula by reference only. This argument assumes two things, neither of which are true. First, that it is necessary to have the formula in effect at the present time to determine the rates that may be presently extended; second, that "repeal" or deletion of the formula provision in 1955 must be construed as a repeal of all the tax rates that were computed under the formula. Actually, however, the reference in section 162b to section 162a as amended in 1947, above quoted, is unnecessary to the fixing of a tax rate for any fund. This reference, and indeed the whole paragraph in which it is contained, operates simply to define the terms used in the preceding paragraph which is the paragraph establishing the maximum permissible rates for and after 1955. As has been seen from the legislative history and language of sections 162a and 162b, the transition to locally established maximum rates had already been accomplished under section 162b procedures before December 31, 1953, the expiration date of the formula provisions, and the rates which were established under such procedures, either by action or inaction of the taxing authorities prior to December 31, 1951, remained in effect after December 31, 1951, except as changed by later referenda or subsequent legislation

exempting them. Once such rate limits were so established, they became the permanent, controlling rates, and were no longer dependent upon the formula provisions of section 162a, nor the continued existence of such provisions. This is clearly why the formula provisions were deleted from section 162a in 1955, for inasmuch as local rates were already established under section 162b, there was no longer need for the formula. We conclude that the references to the formula provisions in the 1955 and 1957 amendments to section 162b neither serve, nor were intended, to revive a part of section 162a by reference.

It is true the formula provisions and the rates computed thereunder were intended to be temporary while local rates were being established, but, unfortunately, during the time such provisions were in existence a great many taxing districts did not establish new rate limitations as the legislature had expected. As to such districts, it would appear that if the undesirable results from the impact of full assessed value were to be avoided, (the purpose behind the formula provisions in the first place,) the legislature had little alternative other than to continue in effect the rate limits computed under the formula as of December 31, 1951, but at the same time, to still permit local change under the referendum provisions of section 162a.

We interpret one of the collector's arguments to be, as has the defendant, that this court should find sections 162a and 162b invalid because they are complex and have created "endless confusion" as a result of their frequent amendment. Specifically, it is objected that, in determining what 1958 rates are, one must consult every statute book from 1945 through 1957 to determine what the maximum rates may be for a particular fund. There is no merit in such a contention. As was pointed out in *Anderson* v. *City of Park Ridge*, 396 Ill. 235, the formula legislation is consistent with the principles of taxation fixed in our constitution and was within the power of the legislature to enact. The formula

provisions were enacted to protect the admittedly valid full assessment legislation, (Ill. Rev. Stat. 1945, chap. 120, par. 627,) from operating unreasonably and, since that time, section 162a and section 162b legislation has been geared to the uncontrovertibly valid purpose of permitting local authorities to decide rate limits for themselves on the basis of need. While perhaps complex, the confusion, if any, created by the statutes is no greater than could be expected when the enormity of the problem and the evils to be remedied are considered. The laudable purposes intended by the original and subsequent tax rate legislation will not be stricken down as unconstitutional even if the scheme of the tax might be considered complex or the method of determining the rate might be considered cumbersome. Cf. *Turner* v. *Wright,* 11 Ill.2d 161, 166-168.

For his next contention the collector asserts that the effect of sections 162a and 162b is to violate section 22 of article IV of the Illinois constitution, prohibiting special or local laws, and in support thereof has appended to his brief seven tables he has prepared purporting to show a great dissimilarity of tax rates in various counties now employing the formula rate, when such counties are compared and contrasted on the basis of total valuation, *per capita* valuation, population, density and area. No express claim is made that the operation of section 162a violates the uniformity requirements of section 1 of article IX of the constitution, (indeed the contrary has already been decided in *Anderson* v. *City of Park Ridge,* 396 Ill. 235,) and his theory of a violation of section 22 of article IV is apparently predicated on *Kremers* v. *City of West Chicago,* 406 Ill. 546. That case, however, presented a materially different constitutional question.

In *Kremers,* where an act authorizing cities, villages, incorporated towns and townships to establish and maintain free libraries was involved, an amendment which provided for a permanent rate limit on the basis of a formula

comparable to that of section 162a was found to produce widely variant rates in cities, towns and villages equally situated, and was therefore held to violate that part of section 22 of article IV which declares: "The general assembly shall not pass local or special laws * * * for— * * * *Incorporating cities, towns or villages, or changing or amending the charter of any town, city or village."* (Emphasis supplied.) The basis for the finding of unconstitutionality was that if "the result of an act purporting to be a general law is to establish dissimilarity in the powers and modes of different municipalities in the levy and collection of taxes, then, since the law conferring these powers and prescribing these modes becomes a part of the charters of the municipalities, it will be regarded as within the prohibition of the constitution against special legislation." 406 Ill. at 551-552; see also: *People ex rel. Miller v. Cooper,* 83 Ill. 585.

But we are not concerned here with the prohibition against laws "amending the charter of any town, city or village." Rather, there is involved that part of section 22 of article IV which prohibits local or special laws—*"Regulating county and township affairs."* (Emphasis supplied.) Since the power to determine rates of taxation and the manner in which assessments will be made is exclusively in the legislature, this court has held that general revenue laws for either purpose do not fall within the constitutional prohibition forbidding the passage of special laws regulating county and township affairs. (*Booth* v. *Opel,* 244 Ill. 317, 323-324; *People ex rel. Green* v. *Board of Commissioners of Cook County,* 176 Ill. 576, 588.) This being so, sections 162a and 162b are not open to the objection the collector makes. Moreover, even if it could be said that this was legislation regulating county and township affairs and that its effect was to establish dissimilarity in the tax rate limits of different counties, the entire legislative program of seeking to avoid inequities arising from full assessment and to permit

rates to be established on the basis of local need would be such a reasonable basis for classification as would prevent such laws from being local or special.

The second phase of the collector's appeal and the defendant's cross appeal involve the 1958 rate limits permissible for the Ogden-Royal Fire District, the town of Urbana special road fund, and the Hensley Township special road fund. All of these funds were created subsequent to January 1, 1946; the specific acts applicable to each provided that annual rates authorized were subject to the provisions of the General Revenue Law of Illinois; and, by section 162c of the Revenue Act, itself a temporary measure to lessen the impact of full assessed valuation, it was provided that funds created subsequent to January 1, 1946, continue the rate limits contained in the act creating the fund but that, with effect from January 1, 1952, such rates were reduced to 80% of the rate contained in such act. See: Ill. Rev. Stats. 1951, 1953, 1955, 1957, chap. 120, par. 643c.

In each instance the county clerk extended rates which ignored the reduction to 80% provided for in section 162c. As to the town of Urbana and Hensley Township taxes, the defendant made primary objections that the entire taxes levied were void due to deficiencies in the referenda held to authorize the levies and, as to all three funds, defendant objected that the rates extendable were subject to reduction to 80% under the provisions of section 162c. The county court sustained the latter objections, but overruled the primary objections to the Urbana and Hensley funds. The collector has appealed from the first ruling, his contention being that section 162c is unconstitutional, while defendant has cross-appealed from the adverse ruling on its primary objection to the two funds.

Again relying on that part of section 13 of article IV of the constitution, which provides that "no law shall be * * * amended by reference to its title only," the collector argues that the 80% clause in section 162c is invalid

as an attempt to amend, or modify, the scores of statutory rates set out in specific statutes, by "one isolated paragraph in the Revenue Law." However, in contending that the modification of rates in such a manner is misleading, the collecter overlooks, first, that the specific acts involved in this case both provided that the rate limitations there fixed were "subject to the General Revenue Law of Illinois" and, second, that the term "General Revenue Law of Illinois" was specifically defined in 1947, as referring to the Revenue Act of 1939, together with all existing and future amendments thereto, and all rules adopted pursuant thereto. (Ill. Rev. Stat. 1947, chap. 131, par. 1.23.) Moreover, his constitutional claim fails to recognize that the General Revenue Law of Illinois is a complete act governing the assessment of property and the levy and collection of taxes. It is well settled that an act, complete in itself, may incidentally modify or amend other statutes without violating section 13 of article IV, and that it is not necessary, when a new act is passed, that all acts it modifies by implication be re-enacted and republished at length. (*People ex rel. Nordstrom* v. *Chicago and North Western Railway Co.,* 16 Ill.2d 264; *Jordan* v. *Metropolitan Sanitary Dist.* 15 Ill.2d 369; *Coordinated Transport, Inc.* v. *Barrett,* 412 Ill. 321.) The authorities cited by the collector, notably *Lombardo Wine Co.* v. *Taylor,* 407 Ill. 454, and *People ex rel. Clarke* v. *Jarecki,* 363 Ill. 180, are distinguishable on their facts. We cannot say here that the enactment of the amendatory statute in this case was "in terms so blind" that the legislature itself might be deceived.

Insofar as the specific contention of the collector is concerned, we conclude the county court properly held that the rates of all three funds were subject to reduction to 80% under the provisions of section 162c.

Turning to the cross appeal of defendant, and to its primary objection against the Hensley and Urbana townships special road funds, it appears in each instance that the

taxes were levied pursuant to favorable elections and under authority of section 108 of the Roads and Bridges Act, which authorized a tax for such purpose at a rate not to exceed .167 per cent. (Ill. Rev. Stat. 1957, chap. 121, par. 116.) The petitions and notices prior to the elections in each case stated the proposition that a rate of .167 percent was to be voted upon, and in each case a general form of ballot, precisely as prescribed in section 109 of the Roads and Bridges Act, (calling for a "Yes" or "No" vote on the proposition: "Shall a special tax for road purposes be levied?",) was employed. (Ill. Rev. Stat. 1957, chap. 121, par. 117.) Since the provisions of section 108 of the Roads and Bridges Act are expressly made subject to the General Revenue Law of Illinois, and since the effect of section 162c of the Revenue Act is to reduce the rate authorized by section 108 to 80%, or to a rate of .1336 per cent, the maximum rate that could be levied, it is defendant's contention that the petitions, notices and ballots employed in these elections should have informed the voters of the reduced rate of .1336 per cent. In other words, it is defendant's contention that the elections were for a greater rate than could legally be levied and therefore are null and void.

Our recent decision in *People ex rel. Gaston* v. *Southern Railway Co.* 21 Ill.2d 272, where an election and a rate likewise subject to debasement under section 162c were involved, is decisive on the issue defendant raises. There, under circumstances which are indistinguishable and where the ballot was also in the precise form described by statute, we held the fact that the voters authorized a tax at a rate greater than the debased rate did not render the election null and void. What was said there has equal application here and precludes the necessity of repeating it.

The judgment of the county court of Champaign County is affirmed in all respects.

*Judgment affirmed.*